NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 14, 2022
Decided June 8, 2022

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 21-2448

| | |
|---|---|
| MELCORP, INC., doing business as GREAT STEAK & POTATO COMPANY, and all others similarly situated, <br>     *Plaintiff-Appellant*, <br><br> *v.* <br><br> WEST AMERICAN INSURANCE COMPANY, <br>     *Defendant-Appellee*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 1:20-cv-04839 <br><br> Gary Feinerman, <br> *Judge*. |

**O R D E R**

Melcorp, Inc. brought a diversity action against West American Insurance Company, alleging that West American wrongly denied coverage for losses incurred as a result of the government ordered shutdown as a response to the COVID-19 pandemic. Melcorp sought a declaratory judgment of coverage pursuant to 28 U.S.C. § 2201 and alleged breach of contract. The district court granted the motion by West American for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and Melcorp now appeals that decision to this court. As with a Rule 12(b)(6) motion to dismiss for failure to state a claim, we review a Rule 12(c) judgment on the pleadings under a *de novo* standard. *Scottsdale Insurance Co. v. Columbia Ins. Group, Inc.*, 972 F.3d 915, 917 (7th Cir. 2020).

Melcorp operates a restaurant, Great Steak & Potato Company ("Great Steak"), in Fox Valley Mall in Aurora, Illinois. In March and April of 2020, the governor of the state issued orders prohibiting on-premises dining and ordering the closure of all non-essential businesses. As a result, Fox Valley Mall notified its tenants that it would temporarily close from March 19, 2020 through March 31, 2020, and Great Steak suspended its operations. The owners of Melcorp were able to access the premises during the closure, and to use the refrigeration and freezers on the premises but discontinued in-person and takeout dining. On or about April 17, 2020, Melcorp filed a claim with West American for the business income it lost as a result of the closure order.

Melcorp argues on appeal that the losses suffered by the mandatory pandemic restrictions were covered losses under the insurance policy, and that West American wrongly denied coverage. The issue in this case concerns the interpretation of the insurance policy, which is governed by Illinois law. Under Illinois law, we construe insurance policies "'as a whole, giving effect to every provision if possible.'" *Paradigm Care & Enrichment Center, LLC v. West Bend Mutual Insurance Company*, 33 F.4th 417, 420 (7th Cir. 2022) quoting *Sandy Point Dental v. Cincinnati Insurance Co.*, 20 F.4th 327, 331 (7th Cir. 2021). Clear and unambiguous words are given their plain and ordinary meaning, but genuine ambiguity is resolved in the insured's favor. *Id*. "But policy language must be 'subject to more than one reasonable interpretation' before it is deemed ambiguous." *Id*., quoting *Sandy Point*, 20 F.4th at 331. "Ambiguity does not arise 'simply because the parties disagree as to its meaning.'" *Id*., quoting *Sandy Point*, 20 F.4th at 331.

Melcorp points to language in the insurance contract under which West American agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." "Covered Cause of Loss" is defined as "direct physical loss unless the loss is excluded or limited in this policy," but did not further define the term "direct physical loss." The insurance policy also contained an Exclusion of Loss due to Virus or Bacteria endorsement, applicable to "all coverage under all forms and endorsements that comprise … [the] Policy," which provides that West American "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

Melcorp argues that the "direct physical loss of … [an insured's] covered Building or Business Personal Property" includes the inability to use a building or personal property that was previously usable. It also argues that "Business Personal

Property" is defined to include intangible property such as an insured's interest as a tenant in improvements or labor, materials or services furnished or arranged by the insured on personal property of others. It therefore reasons that because the term "direct physical loss" includes intangible property like a use interest in labor or services, the term must encompass loss of use and not merely physical alterations.

Since the time that this lawsuit was first filed, this court has issued a series of opinions addressing pandemic-related restrictions and the same language presented in this insurance policy. Those decisions reject the expansive interpretation of "direct physical loss" asserted by Melcorp that would apply it to all loss of use. First, in *Sandy Point*, we considered claims brought by Sandy Point Dental and Bend Hotel Development Corporation. 20 F.4th 327. As to insurance policies under Illinois law which provided coverage for "direct physical loss or damage," we held that in order to state a claim the businesses needed to allege a physical alteration to their property. *Id*. at 333. We left open the possibility that a claim could also be asserted upon a showing of an access- or use-deprivation so substantial as to constitute a complete physical dispossession, as where a property is rendered completely uninhabitable by gas infiltration. *Id.* at 334. We reiterated that holding in numerous cases that followed, applying the same reasoning to challenges by various businesses including hotels, movie theaters, and childcare centers. See, e.g., *Crescent Plaza Hotel Owner v. Zurich American Insurance Company*, 20 F.4th 303, 306 (7th Cir. 2021), (holding that "the term 'direct physical loss or damage' to property does not apply to a business's loss of use of the property without any physical alteration"); *Bradley Hotel Corp. v. Aspen Specialty Insurance Co.*, 19 F.4th 1002 (7th Cir. 2021) (following the reasoning in *Sandy Point* to conclude that the Bradley Hotel Corporation failed to allege the COVID-related suspension of operations was a result of any physical loss or damage to the property); *E. Coast Ent. of Durham, LLC v. Houston Cas. Co.*, 31 F.4th 547, 549–51 (7th Cir. 2022) (in case brought by movie theaters, affirming the reasoning of *Sandy Point* that because the businesses "alleged neither a physical alteration to property nor an accessor use-deprivation so substantial as to constitute a physical dispossession, they failed to state a claim for coverage"); *Paradigm Care*, 33 F.4th at 421-22 (in challenge by child care centers, upholding the denial of coverage because the child care centers did not assert that their property was physically altered by the virus and did not allege anything more than a temporary denial of their preferred use of the property).

The language in Melcorp's policy is indistinguishable from that of the policies in those cases. As with those cases, the coverage is limited to "physical" loss of or damage to covered property and provides coverage during the period of restoration which ends when the property should be "repaired, rebuilt or replaced" or when business resumes

at a new permanent place. Although Melcorp argues that the definition of Business Personal Property includes intangibles in encompassing "labor, materials or services furnished or arranged by you on personal property of others" and "[y]our use interest as a tenant in improvements and betterments," that does not alter the meaning of "physical" loss or damage. For instance, improvements and betterments are defined as "fixtures, alterations, installments or additions" and therefore address physical property. As the district court reasoned, the terms are not rendered superfluous by the limitation to "physical" losses or damages, and in fact are capable of encompassing such circumstances. That definition of Business Personal Property is not inconsistent with an interpretation of "physical loss or damage" defined as a physical alteration or a complete physical dispossession. In any event, our cases have properly held that the same physical loss or damage language and corresponding language terminating the coverage upon repair, rebuild or replacement is clear and unambiguous, and the definition applies equally here.

Similar to the movie theaters and restaurants in the prior cases, Melcorp has failed to allege either a physical alteration to the property or a complete physical dispossession. Melcorp presented no evidence of any physical impact to the property, and it alleged only a temporary restriction on the use of the property but maintained access to the property. Melcorp did not argue in its briefs that the restrictions constituted a total physical dispossession of the property, alleging only a loss of property for its intended use. When asked about it at oral argument, Melcorp stated that in-person dining and carry-out were no longer options because the restaurant was located in the mall that was closed to public access. Melcorp did not address whether catering or delivery, which would not therefore depend on public access, were possible, and acknowledged that it retained access to the property and continued to make use of the refrigeration and freezers at the property. As was the case for all of the businesses in the cases that we have considered, Melcorp was clearly deprived of its intended use of the property at least temporarily, but it does not allege physical dispossession or physical alteration of the property sufficient to constitute "direct physical loss" under the language of the policy. See *Paradigm Care*, 33 F.4th at 421 (holding that "the COVID-19 virus does not effect physical loss or damage to property" under Illinois law, because "the virus ultimately leaves the property physically unaltered … [and] [a]bsent such alteration, direct physical loss occurs only when a risk causes 'complete physical dispossession of property,' and the COVID-19 virus does not"), quoting *Sandy Point*, 20 F.4th at 334. Because Melcorp is not entitled to coverage based on the language of "direct physical loss" in the policy, we need not consider whether it would also be excluded from coverage based on the exclusion in the policy for losses caused by a virus

or for losses of use, but we note that we have found identical language to exclude coverage in a pandemic-related challenge. See *Mashallah Inc. and Tanalli's Park Ridge, LLC v. West Bend Mutual Ins. Co.*, 20 F.4th 311 (7th Cir. 2021) (holding that the virus exclusion barred coverage).

The decision of the district court is AFFIRMED.